**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 26-60245-KUNTZ/AUGUSTIN-BIRCH**

**UNITED STATES OF AMERICA**

**v.**

**DELBERT JAIMIE BAKER, JR.**

**Defendant.**
**____________________________________/**

**UNITED STATES OF AMERICA'S**
**MOTION TO REVOKE THE DEFENDANT'S BOND**

The United States of America, by and through the undersigned Assistant United States Attorney, respectfully moves the Court, pursuant to 18 U.S.C. § 3148, for an order revoking the defendant's bond and detaining him pending trial in the above-referenced matter. As set forth more fully below, within days of his release on bond, the defendant resumed conduct strikingly similar to the bank-fraud offenses charged in this case, demonstrating both that he is unwilling to abide by the terms of conditional release and that he poses an ongoing danger to the community.

**FACTUAL BACKGROUND**

The defendant was charged by indictment (the "Indictment") with one count of theft of government money, in violation of 18 U.S.C. § 641 and four counts of bank fraud, in violation of 18 U.S.C. § 1344(2), for conduct occurring between June 2025 and May 2026. In short, the charges arise from a fraudulent scheme wherein the defendant deposited multiple altered or fictitious checks into accounts held in his name and in the names of other individuals. On September 21, 2026, the defendant made his initial appearance following his arrest on the Indictment. The government and defense agreed to a $150,000 personal surety bond. *See* DE

15. To be released, the defendant was required to sign bond condition paperwork advising him that he could not commit any federal, state, or local offenses while on release. *Id.*

Despite this, on September 28, 2026, a mere week after his release, the defendant deposited a fraudulent $20,000 cashier's check at a federally-insured bank in Coral Gables. The banking institution who purportedly issued the cashier's check confirmed that it never issued the check and that the check was returned as fraudulent. The defendant's role in this additional bank fraud violation is clear. First, his face is clearly visible in surveillance footage showing he deposited the check. In addition, the check was payable to a third party whose name appeared on a blank check recovered from the defendant's car when he was arrested. Moreover, law enforcement obtained posts from the defendant's social media account, where he posted a photo of a receipt memorializing his attempt to deposit the fraudulent check on September 28, 2026.[1] A grand jury returned a Superseding Indictment including the additional bank fraud violation on November 5, 2026.

Notably, the defendant's cavalier indifference to his bond conditions and the reality of facing federal bank fraud charges is only further highlighted by additional review of his social media account. Indeed, the day after the defendant's release on bond, he posted a message to his social media account, stating "Back to regular Programming." Subsequent posts are consistent with ongoing involvement in check-fraud activity. For example, on October 1, 2026, the defendant posted a video of checks printing alongside a post stating "in the lab I go." On another occasion he posted a photograph of two money orders captioned, "Which one the real one? lol."

[1] The social media account in question uses the same username and biographical information as a prior account registered using the defendant's name and phone number. When that account was shut down for suspected fraud, this new account was opened, alongside posts providing links to the prior account and stating that it was a replacement for the same.

Based on the foregoing, there is probable cause to conclude that the defendant continues to engage in bank fraud violations in flagrant disregard of his bond conditions, and the government requests that this Court revoke his bond.

**LEGAL STANDARD**

Pursuant to 18 U.S.C. § 3148, "[a] person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." 18 U.S.C. § 3148(a). Section 3148 further provides that the Court "shall enter an order of revocation and detention if, after a hearing, the judicial officer . . . finds that there is probable cause to believe that the person has committed a Federal, State, or local crime while on release . . . and finds that based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; or the person is unlikely to abide by any condition or combination of conditions of release." 18 U.S.C. § 3148(b); *United States v. Wingo*, 490 Fed. Appx. 189, 190-91 (11th Cir. 2012).

Moreover, "[i]f there is probable cause to believe that, while on release, the person committed a Federal, State, or local felony, a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." 18 U.S.C. § 3148(b). Here, the government submits that the facts support a finding that the rebuttable presumption applies and counsels in favor of bond revocation.

## ARGUMENT

The Court should revoke the defendant's release and order detention pursuant to 18 U.S.C. § 3148(b). The evidence establishes probable cause to believe that the defendant committed a new violation of 18 U.S.C. § 1344 within days of obtaining release. The defendant deposited a fraudulent $20,000 check and posted a photograph of the corresponding deposit receipt on his social media account. The account also shows the defendant openly discussing his ongoing criminal conduct.

The defendant's conduct demonstrates that he should be detained pending trial for two reasons. First, he is unlikely to abide by any condition or combination of conditions of release. The Court afforded the defendant the opportunity for release subject to court-imposed conditions. Rather than conform his conduct to those conditions, the defendant resumed the same fraudulent conduct that resulted in his arrest. The timing of defendant's violations is particularly significant. Within days of obtaining release, the defendant deposited <u>another</u> fraudulent check. In addition, the social media account where he posted a photograph of the deposit receipt for that fraudulent check showed him proclaiming, the day after his release, that he was "Back to regular Programming." In other words, this Court should not expect that the defendant's violation was an isolated incident. Rather, his immediate and overt return to criminal conduct demonstrates a continuing willingness to engage in the same type of criminal behavior charged in the Indictment, despite arrest, federal charges, and court supervision. The subsequent public posting of additional content consistent with check-fraud activity further underscores that this defendant has not been deterred from criminal conduct and displays a cavalier indifference to his bond conditions.

The defendant's history likewise reflects a tendency towards recidivism that further supports detention. The defendant previously served 41 months' imprisonment for a prior fraud-

related conviction. Thus, not only did the defendant return to the same type of conduct after his arrest and release in this case, but prior criminal sanctions for similar conduct have likewise failed to deter him from engaging in fraudulent activity.

Moreover, the defendant's post-release conduct directly rebuts any suggestion that additional conditions would be effective at restraining him from additional crimes. The defendant was expressly advised of the conditions of his release and was required to acknowledge that he could not commit new criminal offenses while on bond. Yet, almost immediately after his release, he engaged in conduct substantially similar to the offenses charged in the indictment. Under these circumstances, the Court need not speculate whether stricter conditions, increased supervision, or additional restrictions would be successful. The defendant's actions demonstrate that he is unwilling to comply with court-imposed conditions.

Second, continued release presents an ongoing danger of additional economic harm to financial institutions and the public. Because there is probable cause to believe that the defendant committed a felony while on release, the rebuttable presumption under § 3148(b) applies. Consideration of the 18 U.S.C. § 3142(g) factors supports detention. The nature and circumstances of the offenses show the defendant is persistent in targeting financial institutions for illicit gain. The evidence, which includes video surveillance, bank records, and the defendant's own social media statements, is also strong. And the defendant's history and characteristics, including his prior fraud conviction and bond violation demonstrate the defendant's propensity for re-offending and is undeterred by prior sanction and court supervision. On these facts, continued release presents an ongoing danger of additional economic harm to financial institutions and the public.

The Eleventh Circuit has made clear that . . . "[t]he term 'dangerousness,' as used in the Bail Reform Act of 1984, has a much broader construction than might be commonly understood in everyday parlance," and "extend[s] to nonphysical harms." *United States v. King*, 849 F.2d 485, 487 n.2 (11th Cir. 1988). In keeping with this, numerous courts in this district and others have held that the notion of danger under the Bail Reform Act encompasses potential financial danger. *See United States v. Burke*, 2013 WL 5194138 (S.D. Fla. 2013) (detaining defendant and recognizing non-physical economic harm as a danger to the community); *United States v. LeClercq*, 2007 WL 4365601, at *4 (S.D. Fl. 2007) ("The reference to safety of the community in the Bail Reform Act of 1984 'refers to the danger that the defendant might engage in criminal activity to the detriment of the community. The [Senate Judiciary] Committee intends that the concern about safety be given a broader construction than merely danger of harm involving physical violence.'"); *see also United States v. Carr*, 1:11-cr-00112 (N.D.ILL), DE 77 at *9 ("Not surprisingly, the cases have long recognized that the term 'danger,' as used in § 3148 refers to unlawful conduct whether economic or physical in nature. That conclusion is consistent with the Senate Committee report accompanying the Bail Reform Act."). Here, the defendant's continued release places the community in danger of further financial crimes by the defendant.

**CONCLUSION**

Accordingly, the Court should revoke the defendant's release and order that he be detained pending trial pursuant to 18 U.S.C. § 3148(b), because the defendant is unlikely to abide by any condition or combination of conditions of release and because no condition or combination of

conditions will reasonably assure the safety of the community.

Respectfully submitted,

JASON A. REDING QUIÑONES
ACTING UNITED STATES ATTORNEY

By: */s/Nadia L. Rossbach*
Nadia L. Rossbach
Assistant United States Attorney
Court ID No. A5503415
99 Northeast 4th Street,
Miami, FL 33132-2111
Telephone: (305) 961-9343
E-mail: nadia.rossbach@usdoj.gov

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on November 5, 2026, I electronically filed the foregoing document with the Clerk of the Court, and served a copy upon all counsel of record, using CM/ECF.

By: */s/ Nadia Rossbach*
Nadia L. Rossbach
Assistant United States Attorney